UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLES ROACH, et al.                                                      PLAINTIFFS

V.                                             CIVIL ACTION NO. 3:23-CV-309-KHJ-MTP

ALLSTATE PROPERTY AND CASUALTY                                          DEFENDANT
INSURANCE COMPANY

ORDER

Before the Court is Defendant Allstate Property and Casualty Insurance Company's ("Allstate") [12] Motion to Dismiss. The Court grants the motion and grants Plaintiffs leave to amend their complaint within 14 days.

I.     Background

This case arises from a dispute over a homeowner's insurance policy claim. In September 2019, Allstate issued a policy to Plaintiffs Charles and Anna Roach (collectively "Roach") to cover property in Raymond, Mississippi. First Am. Compl. [11] ¶¶ 7–8; *see also* Policy [12-2] at 5. Less than a year later, the property sustained wind and hail damage. [11] ¶ 10; *see also id.* ¶¶ 13–14 (describing damage to the property and listing necessary repairs). Roach submitted a policy claim, asking Allstate to cover the corresponding cost of repairs and provide any other available coverage. *Id.* ¶ 11.

Eleven months after the alleged weather event, an adjuster inspected the property. *See id.* ¶ 12. Roach alleges that Allstate performed an "unreasonable investigation" of the claim by not complying with its internal policies on roof

inspections and by not documenting damage to the roof and interior of the property. *Id.* ¶¶ 13–15. Allstate allegedly "prematurely closed" Roach's claim and "denied at least a portion of the claim without an adequate investigation, even though the policy provided coverage for losses" like the ones Roach suffered. *Id.* ¶¶ 15–16. Roach further alleges that "Allstate failed to properly qualify, train, and supervise its employees and agents to whom Allstate entrusted the handling of various portions of [Roach]'s claim." *Id.* ¶ 17.

Roach alleges Allstate denied or underpaid the claim as part of a scheme created by McKinsey & Company ("McKinsey") and implemented by Allstate to underpay claims regardless of their merit. *See id.* ¶¶ 19–44. Roach calls that scheme "Claims Core Process Redesign," or "CCPR." *Id.* ¶ 24. According to Roach, Allstate implemented CCPR in the mid-1990s after a "closed file survey" conducted by McKinsey revealed an opportunity for Allstate to increase profits by reducing payouts on claims. *See id.* ¶¶ 37–38. Allstate allegedly "started with profit goals and then built a claim evaluation system aimed at achieving those goals." *Id.* ¶ 39.

Through CCPR, Allstate sought to "establish a new and reduced fair market value for property damage claims." *Id.* ¶ 72. This involved manipulating claim evaluation software by inputting predetermined claim values that aligned with profit goals rather than inputting real world figures from independent professionals. *Id.* ¶ 39. Allstate then charged adjusters with matching their actual evaluation of claims with these artificial values. *Id.* Allstate rewarded independent adjusters who played ball by giving them additional business. *See id.* ¶ 28.

Additionally, because Allstate realized that claimants represented by counsel received higher claim payments, Allstate implemented a strategy to reduce representation. *See id.* ¶ 74; McKinsey Slides [17-1] at 25–28, 34–35. The thrust of that strategy: schmooze claimants early and get them to accept CCPR-produced payouts, which would often reflect a fraction of actual damages; if they refuse and hire an attorney, employ a "default to trial" method, creating the expectation that non-complying claimants and their attorneys should expect to spend several years in costly litigation. *See* [11] ¶¶ 20–21, 32–33, 64, 73–74. Roach calls this the "From Good Hands to Boxing Gloves" strategy. *Id.* ¶ 73(f).

Roach alleges that "Allstate evaluated the . . . claim using this [CCPR] system and denied the . . . claim for reasons unrelated to the merits of the claim." *Id.* ¶ 40. Though Allstate developed CCPR decades ago, Roach states that Allstate "never stopped using CCPR" and "never hired McKinsey" or anyone else to "teach[] a different claims handling system to [Allstate's] employees." *Id.* ¶ 42. In short, Roach alleges that "Allstate, via CCPR, defined the payout [Roach] would receive . . . before the policy was sold and before the covered loss even occurred." *Id.* ¶ 76. Allstate thus "sold uncollectible insurance to [Roach, and] [u]ncollectible insurance is not insurance." *Id.* ¶ 76; *see also id.* ¶ 43 (alleging Allstate engaged in post-claim underwriting).

Based on this alleged practice, Roach brings five claims against Allstate: 1) bad faith, or breach of the duty of good faith and fair dealing; 2) breach of contract; 3) common law fraud; 4) fraud by nondisclosure; and 5) fraud in sale of insurance

3

policy. *See id.* ¶¶ 45–81. Allstate moves to dismiss all but the breach of contract claim. *See* [12] at 1–2.

II.  Standard

When reviewing a motion under Rule 12(b)(6), the Court must first "tak[e] note of the elements a plaintiff must plead to state [the] claim" to relief, and then decide whether the plaintiff has pleaded those elements with adequate factual support to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quotation omitted). But the Court will "not strain to find inferences favorable to the plaintiff[]" or accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Mere "formulaic recitation of the elements" of a cause of action will not suffice. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Innova Hosp. San*

*Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (internal quotation marks and quotation omitted).

III. Analysis

While the Court applies Mississippi substantive law in this diversity case, it applies federal procedural law in testing the sufficiency of Roach's complaint. *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *Brown v. Miller*, 519 F.3d 231, 238 (5th Cir. 2008) ("[F]ederal courts use federal procedure even when applying state law[.]"). Allstate moves to dismiss Roach's bad faith and fraud claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* [12] at 1–2. The Court grants Allstate's motion.

A. Bad Faith

To state a claim of bad faith, Roach must allege facts to show that Allstate "denied the claim and/or failed to investigate the claim '(1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights.'" *Seibert v. Travelers Cas. & Sur. Co. of Am.*, No. 1:14-CV-188, 2018 WL 2770659, at *5 (S.D. Miss. Mar. 29, 2018) (quoting *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992)). "Both elements are 'questions of law to be decided by the trial judge.'" *Id.* (quoting *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 233 (Miss. 2001) (en banc)).

As an insurer, Allstate has "a duty 'to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation[.]'" *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627–28

5

(5th Cir. 2008) (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003)). Roach alleges that Allstate breached that duty by "denying and delaying payment of a covered claim when [Allstate] knew or should have known its liability under the policy was reasonably clear." [11] ¶¶ 45–46. Further, Roach alleges Allstate breached its duty by "creating and applying a claim handling system . . . designed to ensure that [Roach]'s claim was denied without consideration of the merits of the claim." *Id.* ¶ 47; *see id.* ¶¶ 19–44 (detailing CCPR system). For this, Roach seeks punitive damages. *Id.* ¶ 50.

    Allstate argues Roach's bad-faith claim should be dismissed because it constitutes a mere "pocketbook dispute"—a difference of opinion about the value of the policy claim. Supp. Mem. [13] at 4 (citing *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 136–39 (Miss. 1998); *State Farm Mut. Auto. Ins. Co. v. Roberts*, 379 So. 2d 321 (Miss. 1980)). The Court sees it differently. Roach disputes more than Allstate's valuation of the claim; Roach challenges Allstate's process for reaching that valuation—by allegedly implementing a claims handling process designed to force claimants like Roach to accept payouts untethered to the actual merits of the claim. *See* [11] ¶ 40 ("Allstate evaluated the plaintiff's claim using the [CCPR] system and denied the plaintiff's claim for reasons unrelated to the merits of the claim."). Roach describes that system in detail, *see id.* ¶¶ 19–44, and incorporates the associated slides into the complaint by reference. *Id.* ¶ 40 ("The McKinsey slides are the construction plans for Allstate's 'claim payment factory.'"); *see also* [17-1].

6

The Court finds, however, that Roach's bad-faith claim nevertheless fails because it lacks well-pleaded facts tying CCPR to the adjustment of his claim. *See Aschroft*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."); *see also In re Allstate Vehicle & Prop. Ins. Co.*, No. 9-22-23, 2022 WL 1110380, at *2–3 (Tex. Ct. App. Apr. 14, 2022) (agreeing with Allstate that CCPR "documents that are twenty to thirty years old . . . have no bearing on whether Allstate complied with its contractual and extra-contractual duties when handling [Plaintiff]'s 2018 water damage claim."); *Nava v. Allstate Tex. Lloyds*, No. 1:20-CV-415, 2021 WL 7906872, at *6–8 (E.D. Tex. July 14, 2021) (explaining in context of a discovery dispute that broad-scale CCPR policies dating to the 1990s do not account for the alleged mishandling of the single property claim at issue).

Besides concluding that Allstate evaluated the claim using the CCPR system, Roach alleges only these specific facts about his claim:

- "Allstate's unreasonable investigation of the claim included a failure to comply with Allstate's policies and procedures concerning roof inspections and when to replace or repair a roof." [11] ¶ 13.
- "The storm caused significant damage to the roof, including loss of granules to the shingles. Wind . . . uplifted and removed shingles . . . [and] lifted and loosened the nails that previously fastened the shingles to the sheathing." *Id.*
- Accordingly, "[t]he roof required full replacement under Allstate's policies and procedures including repairs to the roof jack, drip edge, and other structural parts of the roof." *Id.*
- "Water penetrated the newly created openings and damaged the plywood sheathing." *Id.* It also "intru[ded] from the roof" into the property and "caused extensive damage to the bathrooms and living room." *Id.* ¶ 14. This damage called for extensive repairs to the interior of the property. *Id.*
- "Allstate failed to document the damage to the dwelling roof and interior. Allstate conducted an insufficient inspection and prematurely closed the . . .

7

claim. At the time of the investigation, premature closing of claims was part of a pattern and practice of claims handling by Allstate." *Id.* ¶ 15.

Fatally, Roach fails to address the wear-and-tear exclusion contained in the policy. *See* [12-2] at 29; [13] at 9–11.[1] In relevant part, that exclusion provides:

> [W]e do not cover loss consisting of or caused by any of the following:
> 15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
>     b) mechanical breakdown; . . . .
> 21. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.
> 22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
>     a) planning, zoning, development, surveying, siting;
>     b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>     c) materials used in repair, construction, renovation or remodeling; or
>     d) maintenance . . . .

[12-2] at 29. Roach fails to allege that the property suffered no damage that Allstate could legitimately exclude under the above provision. In short, Roach does not allege facts showing that Allstate offered a payout unrelated to the merits of the claim, that Allstate lacked an arguable or legitimate basis for its coverage decision, or that Allstate acted with malice or gross negligence in disregard to Roach's rights. *See Broussard*, 523 F.3d at 628; *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 633 (5th Cir. 2015). Accordingly, Roach fails to state a claim for bad-faith.

---

[1] Roach incorporates the policy into the Amended Complaint. [11] ¶¶ 7–8. "[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

B.  Fraud Claims

Allstate argues that Roach's fraud-based claims fail to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See* [13] at 14–16; [20] at 6–9. The Court agrees.

Under Rule 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case[.]" *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (quotation omitted). At a minimum, Rule 9(b) demands the who, what, when, where, and how to "be laid out *before* access to the discovery process is granted." *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). To survive Allstate's motion to dismiss, Roach therefore "must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Id.* (quoting *Williams*, 112 F.3d at 177−78).

In Mississippi, the elements of fraudulent representation are:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

9

*Watson Lab'ys, Inc. v. State*, 241 So. 3d 573, 584 (Miss. 2018) (quoting *Trim v. Trim*, 33 So. 3d 471, 478 (Miss. 2010)).

Roach's fraud claims lack sufficient particularity under Rule 9(b). For example, Roach alleges that Allstate "denied at least a portion of the claim," [11] ¶ 16, after making a "material representation . . . that Allstate would pay the full cost of casualty losses, less the policy deductible," *id.* ¶ 62. But Roach fails to describe what portion of the claim Allstate denied, much less allege the value of the claim in full.

More importantly, Roach alleges "Allstate lied" when it said the policy "did not cover all of [Roach]'s damages." *Id.* ¶ 65. Presumably, Roach means that Allstate lied by stating that certain damages fell under the policy's exclusions. According to Roach, Allstate told this lie to "properly execute the McKinsey strategy and thus allocate the entire policy premium to profit." *Id.* But Roach fails to acknowledge that Allstate did not represent that it would cover all losses. Instead, it represented that it would protect against losses covered by the policy; "covered by" necessarily means "not excluded by."

Consequently, Roach cannot state a fraud claim centered on a "promise of indemnity," Opp. Mem. [17] ¶ 30, when that promise has clearly defined exceptions, [12-2] at 29, that Roach "makes no effort to identify" or address. *Young v. Bristol-Myers Squibb Co.*, No. 4:16-CV-108, 2017 WL 706320, at *16 (N.D. Miss. Feb. 22, 2017) (citing *House v. Bristol-Myers Squibb Co.*, No. 3:15-CV-894, 2017 WL 55876, at *9 (W.D. Ky. Jan. 4, 2017) (explaining that complaint's discussion of practices

10

"only at a high level of generality" did not suffice under Rule 9(b)). Without addressing the claim's actual viability under the policy, Roach fails to "set forth specific facts supporting an inference of fraud." *Dorsey*, 540 F.3d at 339 (emphasis omitted). And "[s]imple allegations that [Allstate] possess[ed] fraudulent intent will not satisfy Rule 9(b)." *Elson*, 56 F.4th at 1009 (quoting *Dorsey*, 540 F.3d at 339). Roach fails to state a claim for fraud.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. The Court GRANTS Allstate's [12] Motion to Dismiss and DISMISSES without prejudice Counts I, III, IV, and V.

In response to Allstate's [12] Motion to Dismiss, Roach asks that—if the Court grants the motion to dismiss—it allow Roach leave to amend the complaint. [17] ¶¶ 42–43. The Court GRANTS Roach that request. Roach may file a second amended complaint on or before April 19, 2024, if he chooses to do so.

SO ORDERED, this 5th day of April, 2024.

s/ *Kristi H. Johnson*<br>UNITED STATES DISTRICT JUDGE